1
2
3
4
5

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

6

7    DAKOTA SAMUEL S.,

8                    Plaintiff,

9        v.

10   ANDREW M. SAUL, Commissioner
     of Social Security,

11                  Defendant.

12

NO. 2:20-CV-0244-TOR

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

13       BEFORE THE COURT are the parties' cross-motions for summary

14   judgment (ECF Nos. 14-15).  This matter was submitted for consideration without

15   oral argument.  The Court has reviewed the administrative record and the parties'

16   completed briefing, and is fully informed.  For the reasons discussed below, the

17   Court **DENIES** Plaintiff's motion and **GRANTS** Defendant's motion.

18                              **JURISDICTION**

19       The Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

20

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

1    **STANDARD OF REVIEW**

2    A district court's review of a final decision of the Commissioner of Social

3  Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

4  limited: The Commissioner's decision will be disturbed "only if it is not supported

5  by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

6  1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).  "Substantial evidence" means

7  relevant evidence that "a reasonable mind might accept as adequate to support a

8  conclusion." *Id.* at 1159 (quotation and citation omitted).  Stated differently,

9  substantial evidence equates to "more than a mere scintilla[,] but less than a

10  preponderance." *Id.* (quotation and citation omitted).  In determining whether this

11  standard has been satisfied, a reviewing court must consider the entire record as a

12  whole rather than searching for supporting evidence in isolation.  *Id.*

13    In reviewing a denial of benefits, a district court may not substitute its

14  judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

15  1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

16  rational interpretation, [the court] must uphold the ALJ's findings if they are

17  supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674

18  F.3d 1104, 1111 (9th Cir. 2012), *superseded by regulation on other grounds*.

19  Further, a district court "may not reverse an ALJ's decision on account of an error

20  that is harmless." *Id.*  An "error is harmless where it is 'inconsequential to the

ultimate nondisability determination.'" *Id.* at 1115 (citation omitted).  The party

appealing the ALJ's decision generally bears the burden of establishing that it was

harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act.  First, the claimant must be unable "to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12

months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's

impairment must be "of such severity that [he or she] is not only unable to do [his

or her] previous work[,] but cannot, considering [his or her] age, education, and

work experience, engage in any other kind of substantial gainful work which exists

in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria.  *See* 20 §§

404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  At step one, the Commissioner

considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i),

416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity, defined generally as the claimant's ability to perform physical and mental work activities

on a sustained basis despite his or her limitations (20 C.F.R. §§ 404.1545(a)(1),

416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in

the past ("past relevant work").  20 C.F.R. §§ 404.1520(a)(4)(iv),

416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

404.1520(f), 416.920(f).  If the claimant is incapable of performing such work, the

analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination,

the Commissioner must also consider vocational factors such as the claimant's age,

education and work experience.  *Id.*  If the claimant is capable of adjusting to other

work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other

work, the analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On September 22, 2017, Plaintiff filed applications for Title II period of disability and disability insurance benefits and for Title XVI supplemental security income. Tr. 233-243. The applications were denied initially, Tr. 130-136, and on reconsideration, Tr. 143-148. Plaintiff appeared at a hearing before an administrative law judge ("ALJ") on May 23, 2019. Tr. 31-69. At the hearing, Plaintiff amended his alleged onset date from March 24, 1995 to February 1, 2017. Tr. 15. On June 26, 2019, the ALJ denied Plaintiff's claims. Tr. 12-30.

At step one of the sequential evaluation process, the ALJ found Plaintiff had not engaged in substantial gainful activity since February 1, 2017, the alleged onset date. Tr. 17. At step two, the ALJ found Plaintiff had the following severe impairments: depression, anxiety, personality disorder, adult attention deficit hyperactive disorder ("ADHD"), and posttraumatic stress disorder ("PTSD"). Tr. 18. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 18-19. The ALJ then found Plaintiff had the RFC to perform a

full range of work at all exertional levels with the following nonexertional

limitations:

> Regarding mental abilities, the claimant has the ability to understand,
> remember or apply information that is simple and routine,
> commensurate with SVP 2.  Regarding interaction with others, the
> claimant would work best in an environment in proximity to, but not
> close cooperation, with co-workers and supervisors, and should work
> in an environment away from the public.  The claimant does,
> however, have the ability to interact appropriately with others.
> Regarding the ability to concentrate, persist or maintain pace, the
> claimant has the ability with legally required breaks, to focus attention
> on work activities and stay on task at a sustained rate; complete tasks
> in a timely manner; sustain an ordinary routine; regularly attend work;
> and work a full day without needing more than the allotted number or
> length of rest periods.  Regarding the ability to adapt or manage; the
> claimant would work best in an environment that is routine and
> predictable, but does have the ability to respond appropriately,
> distinguish between acceptable and unacceptable work performance;
> or be aware of normal hazards and take appropriate cautions.

Tr. 19.

At step four, the ALJ found Plaintiff has no past relevant work.  Tr. 23.  At

step five, the ALJ found that, considering Plaintiff's age, education, work

experience, RFC, and testimony from a vocational expert, there were other jobs

that existed in significant numbers in the national economy that Plaintiff could

perform such as laundry worker II, small parts assembly, and printed circuit board

assembly.  Tr. 23-24.  The ALJ concluded Plaintiff was not under a disability, as

defined in the Social Security Act, from February 1, 2017 through June 26, 2019,

the date of the ALJ's decision.  Tr. 24-25.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 7

On January 8, 2020, the Appeals Council denied review, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying period of disability, disability insurance benefits, and supplemental security income benefits under Title II and Title XVI of the Social Security Act. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly evaluated Plaintiff's symptom testimony;

2. Whether the ALJ properly weighed the medical opinion evidence;

3. Whether error, if any, was harmless; and

4. What the is the proper remedy.

ECF No. 14 at 15.

## DISCUSSION

**A. Plaintiff's Symptom Testimony**

Plaintiff contends the ALJ failed to rely on clear and convincing reasons to discredit his symptom testimony. ECF No. 14 at 15-18.

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8

there is 'objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" *Molina*, 674 F.3d at 1112 (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "The claimant is not required to show that her impairment 'could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" *Vasquez*, 572 F.3d at 591 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he or she discounted claimant's symptom claims). "The clear and convincing standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7-8; 20 C.F.R. §§ 416.929(c)(3), 416.929(c)(3). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found Plaintiff's impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the evidence. Tr. 20.

### 1. Malingering

Malingering, or exaggeration of symptoms, is a specific and convincing reason to discount allegations. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10

Cir. 2001).  A finding of malingering must be supported by affirmative evidence. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

The ALJ found that Plaintiff tended to exaggerate his symptoms based on Plaintiff's responses to questions in testing and the opinion of Dr. Toews.  Tr. 21-22.  The ALJ noted Dr. Toews testified that the Plaintiff's answers on the Personality Assessment Inventory ("PAI") indicated that his symptoms "were likely exaggerated."  Tr. 20 (citing Tr. 361-370).  The ALJ also cited to Dr. Genthe's notes that the Plaintiff's responses to the PAI "raises the question if the information he provided verbally can be taken at face value," and that "it is possible that the information he provided today exaggerates the actual degree of his mental health problems."  Tr. 21 (citing Tr. 365).  During the PAI, Plaintiff gave wrong answers to common questions, stating that there were 375 weeks in a year and spelling "world" as "would."  Tr. 21.  During subsequent mental status testing, Plaintiff also offered "obvious" incorrect answers, stating that he did not know who the president was or how much change you would receive from 78 cents out of a dollar – a question he previously answered correctly.  Tr. 22 (citing Tr. 361-370, 532-539).

Plaintiff argues that the ALJ erred "by determining that [Plaintiff] exaggerated the PAI when the test results were skewed by his low reading

ability."[1]  ECF No. 14 at 17.  As discussed *infra*, Dr. Toews found that there was no definitive diagnosis of an intellectual disability.  It is the ALJ's responsibility to resolve conflicts in the medical evidence.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  Plaintiff's low reading ability does not overturn the ALJ's rational interpretation of the remaining evidence in the record.  *Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

Plaintiff's obviously wrong answers to questions, including to questions he previously answered correctly, is evidence of malingering.  The opinions of Dr. Toews and Dr. Genthe regarding Plaintiff's likely exaggeration are also relevant. Dr. Toews found that Plaintiff was likely exaggerating in multiple areas.  Tr. 38-39.  While Dr. Genthe did not make a definitive diagnosis of malingering, he noted that Plaintiff showed "a high degree of impression management of mental health symptoms … [which] in turn raises the question if the information he provided verbally can be taken at face value…. Although no diagnostic code of malingering was given, it is possible that the information he provided today exaggerates the

---

[1]    There is no evidence that Plaintiff misunderstood the questions and a low reading ability does not explain Plaintiff's inconsistent responses that he provided in the verbal sections of the exam.  ECF No. 15 at 10.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

1  actual degree of his mental health problems." Tr. 365. The validity of the test

2  results also noted that "[Plaintiff] may not have answered in a completely

3  forthright manner; the nature of his responses might lead the evaluator to form a

4  somewhat inaccurate impression of the client based upon the style of responding

5  described below. [Plaintiff's] response patterns are unusual in that they indicate a

6  defensiveness about particular personal shortcomings as well as an exaggeration of

7  certain problems." Tr. 367. The ALJ cited to affirmative evidence of

8  malingering; therefore, the "clear and convincing" standard does not apply.

9  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). This finding is supported by

10 substantial evidence. Nonetheless, as discussed *infra*, the ALJ gave other specific

11 reasons to discount Plaintiff's credibility that satisfy the "clear and convincing"

12 standard.

13     *2. Medical Opinion*

14     The ALJ found that Plaintiff's alleged symptoms inconsistent with the

15 medical expert's testimony. Tr. 20-21. The ALJ may discount a claimant's

16 statements if the claimant's subjective testimony is contradicted by medical

17 opinion evidence. *See Carmickle*, 533 F.3d at 1161.

18     Here, the ALJ noted reliance on the opinion of Dr. Jay M. Toews, Ed.D., a

19 licensed psychologist with more than 50 years of experience. TR. 20. Dr. Toews

20 noted several concerns regarding diagnoses, including an intellectual disability and

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13

PTSD, that were made without any record of appropriate assessments or testing. *See* Tr. 37-38.  Regarding the intellectual disability diagnosis, Dr. Toews found that Dr. Genthe "did not provide any evidence by way of either achievement testing or cognitive assessments of any kind" to support his diagnosis of an intellectual disability."  Tr. 20.  Dr. Toews further testified that while Plaintiff had a history of diagnosed ADHD, he functioned well in the classroom and there was "no strong concern" regarding his behavior.  *Id.* (citing Tr. 338-370).  Regarding the PTSD diagnosis, Dr. Toews stated that mental status exams were within normal limits and the Frontier Behavioral Health ("FBH") records "provided no basis for the diagnosis, they did no assessments … I could not find evidence of any clinical assessments of PTSD."  *Id.*  Regarding the ADHD diagnosis, Dr. Toews testified that ADHD should be ruled out since the claimant was not taking medications as prescribed.  Tr. 20-21.  Dr. Toews noted that Plaintiff's mental status exams were within normal limits, primary care records found Plaintiff "doing very well" managing his mental health, and one record stated that Plaintiff "was making excuses for why he was unable to do things."  Tr. 20-21.  Dr. Toews testified that this evidence is consistent with Plaintiff's prior answers on the PAI that indicates symptomatic exaggeration, as discussed *supra*.  Tr. 21.

The ALJ reasonably concluded that the medical expert testimony contradicted Plaintiff's claims of debilitating impairments. This finding is supported by substantial evidence.

### 3. Course of Treatment

The ALJ found Plaintiff's alleged symptoms inconsistent with his course of treatment. Tr. 22. The claimant's course of treatment is a relevant factor in determining the severity of alleged symptoms. 20 C.F.R. §§ 416.929(c)(3), 416.929(c)(3). The unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment may serve as a basis to discount a claimant's alleged symptoms. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

Here, the ALJ found that Plaintiff's course of treatment inconsistent with his disability allegations. Tr. 21. The ALJ noted that primary care records show that Plaintiff was being treated with sertraline for his reports of anxiety and depressive symptoms but at other visits he denied symptoms of depression and was PHQ-9 negative. Tr. 21. The ALJ found that the FBH records consistently note Plaintiff to be noncompliant with taking his prescribed medications. Tr. 21. Dr. Toews noted, even with noncompliance, the claimant had normal mental status exams, was well-groomed, with appropriate psychomotor activity, good eye contact, cooperative attitude, normal speech and thought content, euthymic mood,

congruent affect, and denial of any suicidal ideation.  Cognitive function was good

with normal memory." Tr. 21.

Plaintiff argues that Plaintiff "was compliant with his medications" because

he testified that "many of the medications did not help his symptoms, at all, and

that he had side effects from other medications." ECF No. 14 at 16.  Plaintiff

frequently did not take his psychiatric medication for various reasons but Plaintiff

preferred marijuana against his providers' advice.  *See* Tr. 410, 414, 417, 434, 440,

451, 511, 584.  For example, one provider stated "Plaintiff refuses to take

medications because he is living in a van.  We have quite a discussion about what

that had to do with his taking his medications and in the end it came out basically

he just doesn't want [to] take any pills.  He doesn't think he can remember to take

them and makes excuses for why he can't take them and why he can't help himself

why he can't get a job." Tr. 511.  However, he often reported no side effects and

stated that his medications were helpful.  *See* Tr. 403, 410, 434, 440, 502, 549.  It

is the ALJ's responsibility to resolve conflicts in the medical evidence.  *Andrews v.

Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  Plaintiff's explanation does not

overturn the ALJ's rational interpretation of the remaining evidence in the record.

*Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational

interpretation, it is the ALJ's conclusion that must be upheld.").

The ALJ reasonably concluded that Plaintiff's noncompliance with taking prescribed medications was inconsistent with the severity of symptoms Plaintiff alleged. This finding is supported by substantial evidence.

### 4. *Objective Medical Evidence*

The ALJ found Plaintiff's symptom complaints inconsistent with the objective medical evidence in the record. Tr. 21. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005); *Rollins v. Massanari*, 261 F.3d 853, 856-857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2); 416.929(c)(2). Mental status examinations are objective measures of an individual's mental health. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

The ALJ detailed why Plaintiff's reported level of disabling symptoms conflicted with the objective medical evidence. Regarding the intellectual disability, the ALJ noted that while there was a pre-existing diagnosis of ADHD

prior to the alleged onset date, school behavioral observations found Plaintiff "on task the majority of the time." Tr. 21 (citing Tr. 347). Regarding Dr. Genthe's assessment, Dr. Genthe noted that the PAI "raises the question if the information [Plaintiff] provided verbally can be taken at face value," and that "it is possible that the information he provided today exaggerates the actual degree of his mental health problems." Tr. 21. (citing Tr. 365). Regarding Plaintiff's mental status exams, Dr. Genthe found Plaintiff well-groomed, good hygiene, cooperative, friendly, fully oriented, accurately able to recall 4/4 words immediately but only 1/4 after 5 minutes, and was able to make changes in the abstract; however, Plaintiff also gave "apparent wrong answers to common questions," as discussed *supra*. Tr. 21. (citing Tr. 365-367). The ALJ also found that as of May 2018, Plaintiff reported that "he is doing well managing mental health issues, is still open with FBH, and sees MH therapist routinely." Tr. 21 (citing ex. 6F, pg. 4). Overall, the ALJ found the objective medical evidence as showing Plaintiff as presenting with normal mental status exams and without any significant objective worsening in symptoms. Tr. 21-22.

Plaintiff does not initially contest this finding, but rather solely asserts that the "ALJ discounted [Plaintiff's] testimony because the ME testified that he had normal mental status examinations." ECF No. 14 at 16. In reply, Plaintiff cites to examples where Plaintiff presented with fragmented thought process, increased

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 18

rate of speech, anxious and depressed mood, confused and conflicting thoughts, and passive suicidal ideation.  ECF No. 16 at 8-9.  It is the ALJ's responsibility to resolve conflicts in the medical evidence.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  Plaintiff's citations do not overturn the ALJ's rational interpretation of the remaining evidence in the record.  *Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

The ALJ reasonably concluded that this evidence was inconsistent with Plaintiff's allegations of disabling mental health conditions.  Tr. 23.  This finding is supported by substantial evidence.  While a different interpretation could be made as to whether some objective medical evidence conflicted with Plaintiff's reported level of debilitating symptoms, the ALJ articulated several other supported grounds for discounting Plaintiff's reported symptoms.  *See Carmickle v. Commissioner*, 533 F.3d 1155, 1163 (9th Cir. 2008); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (upholding the ALJ where "the ALJ here considered other factors and found additional reasons for discrediting Plaintiff's subjective symptom testimony.").

*5.  Daily Activities*

The ALJ found that Plaintiff's alleged symptoms were inconsistent with his daily activities.  Tr. 23.  The ALJ may consider a claimant's activities that

undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13 (internal citation and quotation marks omitted).

Here, the ALJ found Plaintiff's allegations inconsistent with the longitudinal record and his own testimony. Tr. 22. Plaintiff alleges memory difficulties, difficulties reading, ongoing panic attacks, audio hallucinations, and social anxiety. Tr. 22. First, the ALJ found "while [Plaintiff] has alleged social anxiety and debilitating panic attacks, he met his live-in girlfriend and the mother of his child on a city bus, indicating an ability to interact with others, including strangers in a public setting. *Id.* Moreover, their first date was at a rock concert, typically a crowded venue that would trigger [Plaintiff's] alleged social phobia and panic." *Id*. Second, the ALJ noted that this inconsistency is "consistent with evidence of symptoms of exaggeration as documented by personality testing and pointed out by

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 20

1  Dr. Toews." *Id.*  Overall, the ALJ found "[Plaintiff] is much more functional than

2  alleged, and has not demonstrated a need for functional limitations exceeding those

3  already considered by the RFC." *Id.*

4      The ALJ reasonably concluded that these activities contradicted Plaintiff's

5  claims of debilitating impairments.  This finding is supported by substantial

6  evidence.  While a different interpretation could be made as to whether these

7  activities are consistent with Plaintiff's ability to sustain fulltime work, the ALJ

8  articulated several other supported grounds for discounting Plaintiff's reported

9  symptoms.  *See Carmickle v. Commissioner*, 533 F.3d 1155, 1163 (9th Cir. 2008);

10  *see Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (upholding the ALJ

11  where "the ALJ here considered other factors and found additional reasons for

12  discrediting Plaintiff's subjective symptom testimony.").

13      The ALJ's conclusion based on several findings that Plaintiff's subjective

14  symptom testimony conflicted with the evidence was clear, convincing, and

15  properly supported by substantial evidence.

16  **B.  Medical Evidence**

17      Plaintiff argues that the ALJ improperly considered and weighed the

18  opinions of examining and non-examining physicians, relying on Ninth Circuit law

19  that predates new regulations.  ECF No. 14 at 19-20.

20

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 21

1       As an initial matter, for claims filed on or after March 27, 2017, new

2  regulations apply that change the framework for how an ALJ must evaluate

3  medical opinion evidence.  20 C.F.R. §§ 404.1520c, 416.920c(c); *see also*

4  *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL

5  168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017).  The ALJ applied the new

6  regulations because Plaintiff filed his Title II and XVI claims after March 27,

7  2017.  *See* Tr. 15, 19.

8       Under the new regulations, the ALJ will no longer "give any specific

9  evidentiary weight … to any medical opinion(s)."  *Revisions to Rules*, 2017 WL

10  168819, 82 Fed. Reg. 5844-01, 5867-68.  Instead, an ALJ must consider and

11  evaluate the persuasiveness of all medical opinions or prior administrative medical

12  findings from medical sources.  20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b).

13  The factors for evaluating the persuasiveness of medical opinions and prior

14  administrative medical findings include supportability, consistency, relationship

15  with the claimant, specialization, and "other factors that tend to support or

16  contradict a medical opinion or prior administrative medical finding" including but

17  not limited to "evidence showing a medical source has familiarity with the other

18  evidence in the claim or an understanding of our disability program's policies and

19  evidentiary requirements."  20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

20

The ALJ is required to explain how the most important factors, supportability and consistency, were considered.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  These factors are explained as follows:

> (1) *Supportability.*  The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) *Consistency.*  The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).

The ALJ may, but is not required to, explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. § 416.920c(c)(b)(2).  However, where two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported … and consistent with the record … but are not exactly the same," the ALJ is required to explain how "the most persuasive factors" were considered.  20 C.F.R. § 416.920c(c)(b)(2).

The parties dispute whether Ninth Circuit law that predates that new regulations apply.  ECF No. 15 at 4; ECF No. 16 at 2.  The Ninth Circuit currently requires the ALJ to provide "clear and convincing" reasons for rejecting the

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 23

uncontradicted opinion of either a treating or examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  When a treating or examining physician's opinion is contradicted, the Ninth Circuit held the medical opinion can only "be rejected for specific and legitimate reasons that are supported by substantial evidence in the record."  *Id.* at 830-31 (internal citation omitted).

At this time, the Ninth Circuit has not addressed whether these standards still apply when analyzing medical opinions under the new regulations.  For purposes of the present case, the Court finds that resolution of this issue is unnecessary.  *See Allen T. v. Saul*, No. EDCV 19-1066-KS, 2020 WL 3510871, at *3 (C.D. Cal. June 29, 2020) (citing *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Services*, 545 U.S. 967, 981-82 (2005) ("[T]he Court is mindful that it must defer to the new regulations, even where they conflict with prior judicial precedent, unless the prior judicial construction 'follows from unambiguous terms of the statute and thus leaves no room for agency discretion.'")).

### 1.  Dr. Jay Toews, Ed.D

The ALJ found Dr. Toews' opinion persuasive on the basis that it was well supported and consistent with other evidence in the record.  Tr. 22.  Dr. Toews opined that Plaintiff could perform simple and routine work, with superficial interactions with the public, and in proximity to but not with coworkers, and in a routine work environment.  Tr. 22.

1    Regarding supportability, the ALJ noted that Dr. Toews gave thorough and

2    detailed testimony, referencing each exhibit and explaining why Plaintiff met or

3    did not meet various criteria for the alleged impairments.  Tr. 22.  First, Dr. Toews

4    explained how Plaintiff's ADHD and PTSD were diagnosed prior to the amended

5    alleged onset date, and then carried forward despite a lack of objective testing or

6    objective basis for the diagnosis.  *Id.*  Second, Dr. Toews found these diagnoses

7    suspect as Plaintiff was not compliant with taking prescribed medications and

8    over-reported symptoms as indicated on Dr. Genthe's personality testing.  *Id.*

9    (citing Tr. 338-360, 361-370, 371-401, 402-491, 492-504, 505-531, 532-539).

10    Regarding consistency, the ALJ found Dr. Toews findings were consistent

11    with Plaintiff's mental status exam that were generally "normal" and Plaintiff

12    testimony of public interactions that indicated he is more functional in social

13    situations than he alleged, such as riding the bus, meeting his girlfriend on the bus,

14    and attending a rock concert.  Tr. 22 (citing Tr. 574-587); *see also* Tr. 45-52.

15    The ALJ's finding that Dr. Toews' opinion is persuasive is supported by

16    substantial evidence.

17    *2.  Dr. Thomas Genthe, Ph.D.*

18    The ALJ found Dr. Genthe's opinion not fully persuasive as not supported

19    nor consistent with the record.  Tr. 23.  Dr. Genthe opined that Plaintiff is

20

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 25

markedly limited in adapting to changes, maintaining appropriate behavior, and completing a normal workday/week without interference from symptoms.  Tr. 23.

Regarding supportability, Dr. Genthe did not review other records outside of his own assessments based on Plaintiff's reports.  Tr. 21-22; *see also* Tr. 361, 532. The ALJ noted that the PAI results demonstrated that Plaintiff exaggerated in symptoms in both exams and gave poor effort in mental status testing, reporting 375 weeks in a year, unable to spell "world," not knowing the president, and incorrectly answering questions he previously answered correctly.  Tr. 23.  Dr. Genthe even noted that Plaintiff's responses showed a "high degree of impression management, Plaintiff may have a diagnosis of malingering, and that it was possible the information Plaintiff provided exaggerated his actual degree of mental health problems.  Tr. 365.  Dr. Genthe also relied on a diagnosis of an intellectual disability that was not established through any assessment in either in his examination or treatment records.  Tr. 20, 22, 36-42.

Regarding consistency, the ALJ noted that while Plaintiff's symptoms could reasonably cause some limitations in his functioning, Dr. Genthe's finding of marked limitations is not supported by the record or Plaintiff's own reported level of function, such as using public transportation, caring for his infant, and attending appointments.  Tr. 23.  This is consistent with Ninth Circuit law that a medical

opinion may be rejected by the ALJ if it is inadequately supported. *Bray v. Comm'r of Soc. Sec. Admin*, 554 F.3d at 1219, 1228.

The ALJ's finding that Dr. Genthe's opinion is not fully persuasive is supported by substantial evidence.

### 3. Michael Regets, Ph.D. and Lisa Hacker, M.D.

The ALJ found the medical consultants' psychological assessments persuasive as consistent with and supported by the record. Tr. 23. Dr. Regets and Dr. Hacker opined Plaintiff has moderate limits in social interaction. *Id.*

Regarding supportability, the ALJ found Plaintiff's symptomatic reports are tempered by his poor effort and symptom exaggeration which supports that "moderate" limitations in concentration, persistence, and pace cannot be reasonably established. *Id.* The ALJ also noted that these findings are supported by Plaintiff's mental status exams that lack veracity, the records that are "broadly normal," and the prior school records that did not indicate loss of the ability to concentrate. *Id.* (citing Tr. 338-360, 361-370, 402-491, 492-504, 532-539, 574-587). Regarding consistency, the ALJ found the opinions consistent with the testimony of Dr. Toews and the longitudinal record that establishes Plaintiff's diagnoses of panic disorder and depressive disorder with symptoms including panic attacks and depressed mood. *Id.*

The ALJ's finding that the medical consultants' psychological assessments are persuasive is supported by substantial evidence.

### 4.  *Merry Alto, M.D. and Gordon Hale, M.D.*

The ALJ found the medical consultants' physical assessments persuasive as consistent with and supported by the record.  Tr. 23.  Dr. Alto and Dr. Hale opined that there is insufficient evidence to establish any medically determinable impairments.  Tr. 23.

Regarding supportability and consistency, the ALJ noted that the finding is supported by the objective record and is unrebutted by Plaintiff.  *Id.* (citing Tr. 371-401, 505-531, 574-587).  The ALJ further noted that while Plaintiff has various physical complaints, the allegation of symptoms alone is insufficient to establish a physically determinable impairment.  *Id.*

The ALJ's finding that the medical consultants' physical assessments are persuasive is supported by substantial evidence.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.

//

//

//

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 28

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 14) is **DENIED**.

2. Defendant's Motion for Summary Judgment (ECF No. 15) is

   **GRANTED**.

The District Court Executive is directed to enter this Order, enter judgment

accordingly, furnish copies to counsel, and **CLOSE** the file.

DATED June 17, 2021.



THOMAS O. RICE
United States District Judge